# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

—————————————————————— :      Hon. Harold A. Ackerman
BARNERT HOSPITAL, et al.                  :      Civil Action No.: 06-3266(HAA)
                                          :
  Plaintiffs,                   :
                                          :
  v.                            :
                                          :REPORT AND RECOMMENDATION
HORIZON HEALTHCARE SERVICES,              :
INC., d/b/a HORIZON BLUE CROSS            :
BLUE SHIELD OF NEW JERSEY, et. al.,       :
                                          :
                                          :
  Defendants.                    :
—————————————————————— :

  This matter comes before the Court on the motion of Plaintiffs to remand the action to the Superior Court of New Jersey pursuant to 28 U.S.C. §§ 1331 and 1441(a). This Court will present its opinion via report and recommendation as permitted pursuant to L. Civ. R. 72.1(a). For the reasons set forth herein, it is respectfully recommended that the case should be remanded to state court.

## BACKGROUND

  Plaintiffs are hospitals ("Plaintiffs"), licensed under the laws of the State of New Jersey, who provide health care services to the state's residents. An essential part of the Plaintiffs' business is to enter into participating provider agreements with select third-party payors of healthcare services, such as insurance companies, health maintenance organizations, preferred provider organizations, self-insured employer plans or groups, and other managed care

organizations (collectively known as "MCOs"). Defendant Horizon Health Care Services Inc. and it subsidiaries ("Horizon") are one of the largest MCOs in New Jersey and administer the provider agreements at issue in the instant matter.

The Funds are an "employee welfare benefit plan" (" the Plan(s)") as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), *et seq.* Each Plan, in this matter, has contracted with Horizon so that it can offer its Plan Members a Plan with in-network benefits for services provided in Horizon's network. Horizon's network includes the Plaintiffs in this matter.

Pursuant to a series of individual Network Hospital Agreements ("Agreements"), each Plaintiff and Horizon mutually agreed upon a confidential, discounted reimbursement rate ("Discounted Rates") for healthcare services provided to its subscribers as well as members of the Plans where Horizon acted as an Administrative Services Organization ("ASO"). ASOs, including Horizon, are responsible for processing claims and adjudicating disputes over claims for coverage. The Agreements between Plaintiffs and Horizon provided that the Discounted Rates would only apply if Horizon used its Basic Administration Services, including what is known as utilization management ("UM") procedures. The Plaintiffs allege that the UM procedures were to be used when processing any claim they submit to Horizon.

Typically, when Plan members and their beneficiaries receive services, under a Plan, at any of the Plaintiff Hospitals the Plaintiffs must submit a claim for payment on Horizon's UB92 Form. Apparently, the UB92 form is a standard form used across the insurance industry and can be submitted in either paper or electronic format.

Horizon states that in field 53 of the UB92 form the Plaintiffs specifically indicate that

benefits were assigned to the Hospital by the Plan Member or beneficiary. On August 28, 2006, Horizon submitted multiple documents on this Court representing paper and electronic filings of UB92 claim forms for several of the Plaintiffs in this case. See Horizon Brief in Opposition to Plaintiffs' Motion to Remand ("Horizon's Brief") at Ex. A.). Each UB92 form contains a "Y" in field number 53. It appears that this is a standard, automatic entry and neither the Plaintiffs nor beneficiary has a choice whether that field has a "Y" or presumably the opposite, a "N". Also provided as an attachment to Horizon's brief was what appears to be instructions and an explanation to the beneficiary of the UB92 claim form that are found on the reverse side of the form. Paragraph one (1) of the reverse side of the form states:

> [i]f third party benefits are indicated as being assigned or in participation status, on the face thereof, appropriate assignment by the insured/beneficiary and signature of patient or parent or legal guardian covering authorization to release information are on file.

As Horizon states, it appears that every one of the exemplars indicates that the members assigned their rights to receive benefits under their respective Benefit Plan. However, equally evident is the lack of alternative.

According to the Plaintiffs, in 2000, Horizon began to offer a new type of employee benefit plan designated as the "ASO Lite Product". Allegedly, the ASO Lite Product enabled Plan members to receive benefits at the Plaintiff Hospitals' Discounted Rates without having to undergo the UM procedures. The Plaintiffs assert that the ASO Lite Product Plans or their ASOs processed, adjudicated, and paid the claims according to their own UM policies and procedures and did not use the Horizon UM procedure. In spite of this, the beneficiaries received access to the Plaintiffs' Discounted Rates.

The implementation of the ASO Lite Product is what resulted in the instant dispute. The Plaintiffs allege that the ASO Lite Product disseminated the Plaintiffs' Discounted Rates without their consent and, as a result, they were forced to expend substantial resources to comply with multiple Plans' rules. Ultimately, a number of Plans with existing contracts with the Plaintiffs terminated their relationship with Plaintiffs and chose to use the ASO Lite Product instead. As a result, the Plaintiffs state that the Plans have only reimbursed the Plaintiffs for healthcare services provided to the ASO Lite Product Plans' members in the amount of the Discounted Rates rather than the published rates.

## PROCEDURAL HISTORY

On July 19, 2006, the Plaintiffs filed suit in the Superior Court of New Jersey, Law Division, Bergen County. The three count complaint alleges breach of contract, unjust enrichment and quantum meruit. Plaintiffs allege that they suffered damages in the amount of $50 million or more from Horizon's breaches which ultimately resulted in the ASO Lite Product Plans' underpayment of certain claims.

On July 19, 2006, Horizon filed a notice of removal pursuant to federal question jurisdiction established by 28 U.S.C. § 1331. Horizon contends that since all the Plans are employee benefit and welfare plans formed under ERISA, they are governed by ERISA and therefore, any claims related to such plans are preempted by ERISA and are properly before this Court. On August 3, 2006, the Plaintiffs moved to remand the case arguing that Horizon has not met its burden under 28 U.S.C. § 1331 to prove preemption and removal.

<u>**DISCUSSION**</u>

<u>**Federal Question Removal**</u>

A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. 28 U.S.C. §§ 1331, 1441(a). Under the "well-pleaded complaint" rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). To support removal, "[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiffs cause of action." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-11 (1983) (citing *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109 (1936). Federal preemption is ordinarily a defense to a plaintiff's suit and, as such, does not appear on the face of a well-pleaded complaint. *Anderson*, 539 U.S. at 6; *Franchise Tax Bd.*, 463 U.S. at 12.

A party seeking to remove bears the burden of proving that it has met the requirements for removal. *Group Hospitalization & Med. Servs. v. Merck-Medco Managed Care, LLP*, 295 F. Supp. 2d 457, 461-462 (D.N.J. 2003). Removal statutes are strictly construed against removal, and all doubts should be resolved in favor of remand. *Entrekin v. Fisher Scientific Inc.*, 146 F. Supp. 2d 594, 604 (D.N.J. 2001).

The complaint in this matter asserts common law causes of action for breach of contract, unjust enrichment and quantum meruit.  The Complaint does not, on its face, present a federal question. However, Horizon asserts that a federal question arises in the context of ERISA. Specifically, Horizon alleges that this matter is properly before this Court because the Plaintiffs' claims against the Plans are completely preempted by ERISA and suggest that the matter is

properly removed under ERISA's civil enforcement mechanism, § 502(a). On the other hand, the Plaintiffs assert that removal in this matter is improper because the claims of breach of contract, unjust enrichment and quantum meruit do not fall within the narrow scope of ERISA's civil enforcement provision.

**ERISA's Civil Enforcement Mechanism: Complete Preemption**

"It is true that the federal courts have federal question jurisdiction only when a federal claim appears in the complaint, and not when a federal preemption defense may eventually be raised in litigation". *Pryzbowski v. U.S. Healthcare Inc.*, 245 F.3d 266, 271(3d Cir. 2001). However, certain federal laws, including ERISA, so sweepingly occupy a field of regulatory interest that any claim brought within that field, however stated in the complaint, is in essence a federal claim. *See id.* In such cases, the doctrine of complete preemption provides for federal jurisdiction and allows removal to federal court. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). "State law claims seeking relief within the scope of section 502(a) of ERISA are within this select group of cases where Congress has completely preempted an area of law." *Id.* at 62; *Pryzbowski*, 245 F.3d at 271-72. Thus, if the claim is one that falls within section 502(a) of ERISA, removal to federal court is proper. *Levine v. United Healthcare Corp.*,  402 F.3d 156, 162 (3d Cir. 2005).

Additionally "[a]lthough the well-pleaded complaint rule would ordinarily bar the removal of an action to federal court where federal jurisdiction is not presented on the face of the plaintiff's complaint, the action may be removed if it falls within the narrow class of cases to which the doctrine of "complete pre-emption" applies. *Pascack Valley Hospital, Inc. v. Local 646A UCFW Welfare Reimbursement Plan,* 388 F.3d 393, 399 (3d Cir. 2004) (citing *Aetna*

*Health Inc. v. Davila*, 542 U.S. 200 (2004); *Taylor*, 481 U.S. at 63-64. As a "corollary of the well-pleaded complaint rule," complete preemption recognizes "that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *See id.* (citing *Taylor*, 481 U.S. at 63-64; *accord Anderson*, 539 U.S. at 8. ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.")).

ERISA's civil enforcement mechanism, § 502(a), "is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule'." *Davila*, 542 U.S. at 208. As a result, state law causes of action that are "within the scope of . . . § 502(a)" are completely pre-empted and therefore removable to federal court. *Taylor*, 481 U.S. at 66; *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 446 (3d Cir. 2003). The Supreme Court has recently clarified the inquiry in such cases:

> [i]t follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some-point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila*, 542 U.S. at 208. [internal citations omitted]

Accordingly, this case is removable only if (1) the Plaintiffs could have brought their breach of contract, unjust enrichment claim and/or quantum meruit claims under § 502(a), and

(2) no "independent legal duty" supports the Plaintiffs' claims. *Id.*

### a. Quantum Meruit/Unjust Enrichment

To avoid complete preemption and removal under Section 502(a)(1)(B) of ERISA, a cause of action must arise out of an "an independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. The Plaintiffs' quantum meruit claim relates to certain alleged agreements between the Plaintiffs and Horizon regarding the discounted rates and the manner in which the Plans were to be administered. On its face this claim does not directly depend on the ERISA aspect of the Plans. Rather, it requires a determination of the appropriate amount of reimbursement to the Plaintiffs for services rendered under the ASO Lite Product Plan as well as a determination of how certain quasi-contractual rights, related to the ASO Plans are to be enforced.

Horizon asserts that the Plaintiffs' claims create no legal duty independent of the Plans. Specifically, Horizon alleges that the Plans' obligations to pay for services rendered to Plan members "arises, if at all, from the terms of the ERISA Plans". *See* Horizon's Brief at 9. Horizon urges this Court to find that "unless there has been some promise to pay, misrepresentation concerning payment or other facts not present or even alleged here, the Plans' payment obligations are defined solely by the terms of the Benefit Plans and run only to their Plan Members." *See* Defendants' Brief in Opposition at 9-10. To support this claim Horizon has asked this Court to compare, the instant matter with the holdings of *Duke v. Clean Harbors, Inc.*, 2006 WL 1806456 (D.N.J. June 30, 2006) and *Levine*, 402 F.3d 156. Prior to addressing each in turn the Court finds it necessary to entertain a brief discussion on the similarities and differences between a claim for quantum meruit versus one for unjust enrichment as they are, sometimes,

used interchangeably in the parties' submissions to this court.

Quantum meruit is a form of quasi-contract that enables the performing party to recover the reasonable value of the services rendered. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437-38 (1992). In quantum meruit "it is well settled that where one performs services for another at his request, but without any agreement or understanding as to wages or remuneration, the law implies a promise on the part of the party requesting the services to pay a just and reasonable compensation." *Kopin v. Orange Prods.*, 297 N.J. Super. 353, 367-68 (App. Div. 1997). In effect quantum meruit implies a contract.

Similarly, under New Jersey law, a claim under the quasi-contractual theory of unjust enrichment has two essential elements: "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. West Milford*, 144 N.J. 564, 575 (1996). "Furthermore, it is generally the case that when a valid, express contract covers the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory such as unjust enrichment." *Ramon v. Budget Rent-A-Car Sys.*, 2007 U.S. Dist. LEXIS 11665 (D.N.J. February 20, 2007) *See also Moser v. Milner Hotels, Inc.*, 6 N.J. 278 (1951).

The causes of action of quantum meruit and unjust enrichment seem extraordinarily similar in nature and while they can be plead simultaneously and most often are, they are very distinct in nature. Simply put, quantum meruit implies the contract in which a claim for unjust enrichment can be made upon. As previously stated, Horizon asserts that the *Duke* and *Levine* matters hold that beneficiary's unjust enrichment claims are preempted under ERISA. This Court is not persuaded by Horizon's argument and finds that neither Duke nor Levine are on point or

even analogous to the instant matter.

In *Duke*, plaintiff brought a state court breach of contract action, including a cause for unjust enrichment, to recover twenty-six weeks worth of severance following a lay-off. *Duke*, 2006 WL 1806456. Defendant argued that the plaintiff was not entitled to those benefits under the severance plan and sought to have the matter removed to federal court pursuant to 28 U.S.C. § 1331 under the preemption doctrine as defined in Section 502(a) of ERISA. *Id.* On cross motions for summary judgment the *Duke* Court was asked to decide whether plaintiff's state law claims for breach of contract and unjust enrichment were subject to ERISA's broad preemption power.

The *Duke* Court held that in order to meet ERISA preemption two requirements must be met. First, "the Severance Plan must be an ERISA plan; and second, the claims must 'relate to' the Severance Plan. *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *Wood v. Prudential Insurance Co. of Am.*, 207 F.3d 674 (3d Cir.); *Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir.1989). The plaintiff, in *Duke*, did not object to the characterization of the Severance Plan as an ERISA plan and more importantly did not object to the assertion that his claims for benefits related to the ERISA regulated plan.

*Duke* is wholly inapposite to the facts and legal issues presented in this matter. First, in this case, the Plaintiffs are not seeking recovery under any plan, let alone one grounded in ERISA. As indicated in the Plaintiffs' complaint as well as subsequent filings with this Court, they are seeking reimbursement under a quasi contract. The Plaintiffs allege that the causes of actions that arise in this matter are not the result of a contract between the Plaintiffs and Horizon. Rather, the causes arise from contracts between Horizon and an intermediary administrator, or

-10-

the ASO Lite Product Plans. The use of the ASO Lite Plan at Plaintiff Hospitals, resulted in a continual course of dealing between the Plaintiffs and Horizon where Plan beneficiaries received the benefit of Discounted Rates even when the UM procedures were not used. Because there is no ERISA plan at issue in this case, only a course of dealing between two parties to an ERISA Plan, this Court could not find evidence that the first prong of *Duke* is met. Therefore, there can be no analysis under the second prong. Most critically, the unjust enrichment claim in *Duke* related directly to a Plan determined by the Court and agreed upon by the parties to be an ERISA plan. It is not enough to say, however, that because one unjust enrichment claim is considered preempted, all are. As can be seen from the *Duke* case a claim for unjust enrichment is preempted if it meets certain criteria. Those same criteria were not present in this case.

The *Levine* case also poses problems for Horizon. In *Levine*, plaintiffs, the insured, brought a claim for unjust enrichment in state court and defendants, the plan insurers, sought to have the matter removed to federal court pursuant to preemption under Section 502(a) of ERISA. The *Levine* Court, in determining its holding, relied heavily on the decision in *Pryzbowski*. 245 F.3d 266.

The Third Circuit in *Pryzbowski*, laid out a "framework for determining whether a case is completely preempted under section 502(a) of ERISA." *Levine*, 402 F.3d at 162. (referencing *Pryzbowski*, 245 F.3d 266). In order to ensure that Congress's intent of giving section 502(a) "extraordinary preemptive force" was fulfilled, [the *Pryzbowski* Court] utilized the two categories of ERISA cases, originally set out by the Supreme Court in *Pegram v. Herdrich*. 530 U.S. 211 (2000) (citing *Pryzbowski*, 245 F.3d at 271). The first category involves cases where the claim challenges the administration of, or eligibility for, benefits. These cases fall within the

scope of 502(a) and are preempted. *Id.* at 273. The second group of cases challenges the quality of the medical treatment performed and is not preempted. *Id.*

The case at bar challenges neither the administration or eligibility for benefits nor the quality of the medical treatment provided. Therefore, like the *Levine* Court, this Court would have to look beyond the traditional framework set forth in *Pryzbowski* to determine whether this case and the quantum meruit/unjust enrichment causes of action, fall within Section 502(a). *Levine*, 402 F.3d at 162. However, such an in depth analysis is not required because of the inapposite nature of the facts in *Levine*, the legal analysis in *Levine*, and the application of said analysis to the facts presented herein.

*Levine*, and the authority related therein, specifically deals with cases where the Courts have determined the causes of action relate to "benefits due". *Id.* In *Levine* the Court determined that claims for reimbursement of previously paid health benefits were actually claims for benefits due and therefore fell under ERISA preemption. The *Levine* Court relied on the Fifth Circuit case of *Arana* and the Fourth Circuit *Singh* case to supports its finding. *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003); *Singh v. Prudential Health Care Plan Inc.*, 335 F.3d 278 (4th Cir. 2003). In all three cases it was of no matter to the Court that the cause of action was for unjust enrichment or sounded in an explicit contract. The Courts' decisions ultimately turned on whether the claims unjust enrichment, negligent misrepresentation and subrogation were ultimately causes of actions to retrieve benefits due. In the instant case there is absolutely no cause of action pending for payment of benefits. In fact, as both parties admit, the benefits were already paid and the beneficiaries already received their benefits due. Moreover, the cause of action in the instant matter, unlike *Duke*, *Levine*, *Arana* and *Singh* is between the Plaintiffs and

-12-

the insurance providers rather than the beneficiary and the provider. Therefore, this Court has determined that none of the aforementioned cases are relevant to the facts at present and offer no authority on same.

**b. Assignment**

Horizon alleges that regardless of the status of the quantum meruit claim the matter is preempted by ERISA and removable based on the grounds that the benefits at issue were assigned from the beneficiary to the Plaintiffs and that any action to collect on said benefits by the Plaintiffs is the same as if the beneficiaries themselves were trying to collect. In support of their arguments on this issue both parties rely heavily on the Third Circuit's decision in *Pascack*,. 388 F.3d 393.

In 2004, the Third Circuit in *Pascack* was faced with a similar set of facts as the case at bar. Like Pascack, the complaint in this matter "does not expressly refer to ERISA and the rights or immunities created under ERISA are not elements, let alone essential elements, of the plaintiff's claims." *Id.* at 393. The *Pascack* Court opined that "[t]he possibility-or even likelihood-that ERISA's pre-emption provision, 29 U.S.C. § 1144(a), may pre-empt the Hospital's state law claims is not a sufficient basis for removal." *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 12). Therefore, the *Pascack* Court determined that additional analysis of the claims themselves was required to determine whether they were properly plead in federal court.

The *Pascack* Court held that the hospital in that case could not have brought its claims under § 502(a) of ERISA as it did not have standing to sue under that statute. Specifically, the Court held

[s]ection 502(a) of ERISA allows "a participant or beneficiary" to bring a civil action,

-13-

> inter alia, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."By its terms, standing under the statute is limited to participants and beneficiaries.("ERISA carefully enumerates the parties entitled to seek relief under § 502 . . . ."). The parties agree that the Hospital is nether a participant nor a beneficiary, and that the Hospital does not have standing under ERISA to sue in its own right. [internal citations omitted]

Moreover, according to federal statute, a participant is defined as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* at § 1002(8). *See also Pascack*, 388 F.3d at 400.

The *Pascack* parties disputed whether, under the law of the Third Circuit, the Hospital could have obtained standing under §502(a) "by virtue of an assignment of a claim from a participant or beneficiary". *Id.* The same dispute has arisen in the case at bar. Specifically, Horizon argues that as assignees of the Plan members, the Plaintiffs could have brought suit under ERISA against the Plans to challenge the sufficiency of the amounts the Plans reimbursed the Plaintiffs. Essentially, Horizon asserts that the Plaintiffs can or could have stood in the shoes of the Plan Members.

The *Pascack* Court did not resolve whether a hospital can establish standing to sue under Section 502(a) based upon an assignment of a claim from a participant or beneficiary. In fact, the *Pascack* Court declined to entertain the arguments of assignment as there was nothing in the record indicating that the Plaintiffs had, in fact, assigned any of their claims to the hospital.

-14-

Unlike *Pascack*, Horizon, in this case has asserted that the benefits were validly assigned and have offered more than fifteen samples of completed UB92 claim forms[1] submitted to Horizon by the various Plaintiffs. Additionally, Horizon asserts that on the back of every UB92 form, the Plaintiffs certify, under penalty of perjury, that, if Field 53 is indicated with a "Y", then the appropriate assignments are maintained in their files. Therefore, unlike *Pascack*, assignment is a valid issue in this matter and must be considered.

The *Pascack* Court does not provide this Court with any judicial authority on the assignment issue. However, the issue of federal jurisdiction, based on an assignment of ERISA benefits is no stranger to this Court.[2] In fact, the Honorable Harold A. Ackerman, U.S.D.J. upheld a Report and Recommendation of the Honorable Mark Falk, U.S.M.J. in *Englewood Hospital and Medical Center v. AFTRA Health Fund*, (Civil No. 06-637(HAA)) which facts are similar, if not the same as those presented here.

Englewood was an organization engaged in providing medical services to the general public. Englewood entered into a contract with Multiplan, Inc., wherein it agreed to become a member of a PPO Network and to accept discounted payments for group health coverage services provided to subscribers, subject considerations detailed in a contract between Englewood and Multiplan. The Fund, in *Englewood*, was an "employee welfare benefit plan" as defined in Section 3(1) of ERISA. The Fund provided medical, surgical, hospital and other benefits to

---

[1] Uniform Bill 92 forms ("UB92") are claim forms submitted by the hospitals to Defendants for payment on the services rendered.

[2] See *Saint Barnabas Med. Ctr. V. N.N.J. Teamsters Benefit Plan*, No. 03 Civ. 3187, 2006 WL 3371740 (D.N.J. Nov. 20, 2006); *Newark Beth Israel v. N.N.J. Teamsters Benefit Plan*, Civ. Nos. 03-2922, 05-5309, 05-5737, 05-5742, 2006 U.S. Dist. LEXIS 70997 (D.N.J. Sept. 29, 2006).

individuals covered by collective bargaining agreements with the American Federation of Television and Radio Artists. The Fund made health coverage available to its participants through Multiplan. Through a contractual relationship with Multiplan, the Fund had access to discounted rates for covered services.

In December, 2005, Englewood filed an action in the Superior Court of New Jersey alleging common law claims for breach of contract and unjust enrichment. Englewood asserted that it was an intended third-party beneficiary of the contract between the Fund and Multiplan and that the Fund failed to comply with the payment schedule set forth in the Fund's contract with Multiplan. Englewood alleged over $35,000 in damages, the difference between the discounted amount paid by the Fund and the total amount charged for the medical services.

Shortly after the *Englewood* suit was filed, the Fund removed the action pursuant to 28 U.S.C. § 1441 on the grounds that Englewood's claims were completely preempted by ERISA, thereby presenting a federal question.

The *Englewood* Court recognized that the Third Circuit did not resolve in *Pascack* whether a hospital can establish standing to sue under § 502(a) of ERISA. Nevertheless, Judge Falk and Judge Ackerman concurred that the presence or absence of an assignment in the record is not dispositive because the Fund is unable to overcome the second prong of the *Pascack* test: that no other legal duty supports the Hospital's claims. *Pascack*, 388 F.3d 393.

Like *Englewood*, the parties in this matter, pursuant to a series of individual Network Hospital Agreements, agreed upon discounted reimbursement rates at which Horizon would reimburse the Hospital for healthcare services provided to its subscribers, as well as members of the Plans for which Horizon acted as an ASO to process and adjudicate claims. Under the

Agreements, the discounted rates are only applicable if Horizon applied its Basic Administrative Services, including its UM procedures when processing all claims submitted by the Plaintiffs.

As previously stated, in 2000, Horizon began to offer employee benefit plans a new product, the ASO Lite Product. The ASO Lite product enabled the Plans to receive the benefits of the Plaintiff Hospitals' Discounted Rates without having to use the UM procedure which the Plaintiffs allege ultimately resulted in a $50 million loss.

In *Englewood*, Multiplan, the Defendants PPO, similar to Horizon in this matter, allegedly failed to comply with the Plans payment schedule. Here, Horizon allegedly failed to comply with similar administrative controls, following the UM procedure. Englewood and the Plaintiffs here allege the same result, underpayment of claims. Also analogous to *Englewood* is Horizon's argument in support of removal: that the Plaintiffs hold a valid assignment for the claims that relate to these actions and therefore would have standing to sue under § 502(a) of ERISA.

Like *Pascack* and *Englewood*, "the crux of the parties' dispute", in this matter "is the meaning of the subscriber agreement, the contract that goes to the discounted rates." *Id.* at 402. As clearly stated in *Merck-Medco*, the "status of the parties is essential" as to whether a claim is cognizable under § 502(a). *Merck-Medco Managed Care, LLP*, 295 F. Supp. 2d at 461-462. Section 502(a) of ERISA allows a civil action to be brought "by a participant or beneficiary...to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The Plaintiffs, in this matter, are neither "participants" or "beneficiaries" as defined under

-17-

ERISA and their claims are predicated on a separate legal duty independent of ERISA. Nor are

the Plaintiffs claims for breach of contract, unjust enrichment and quantum meruit "inextricably

intertwined" with the terms of the ERISA plan. This Court agrees with *Englewood's*

interpretation of the Third Circuit's ruling in *Pascack*, and finds that the existence of an

assignment does not affect that analysis. *See Englewood,* (Civil No. 06-637(HAA))*; See also*

*Newark Beth Israel v. N.N.J. Teamsters Benefit Plan*, Civ. Nos. 03-2922, 05-5309, 05-5737, 05-

5742, 2006 U.S. Dist. LEXIS 70997 (D.N.J. Sept. 29, 2006). The *Pascack* and *Englewood* Courts

recognized that the hospital's state-law claims were predicated on a legal duty independent of

ERISA even though the hospital's claims "[t]o be sure, are derived from an ERISA plan, and

exist 'only because' of that plan." *Pascack*, 388 F.3d at 402 (citing *Davila*, 542 U.S. at 210). The

Court noted in *Pascack*, and this Court agrees, that interpretation of the ERISA plan might have

formed an essential part of the Plaintiffs' claims if coverage and/or eligibility were disputed.

However, in the instant matter, neither are even questioned. In fact, the participants and/or

beneficiaries already received the care permitted under the Plans and Horizon already reimbursed

the Plaintiffs. What is in question is the proper amount that the Plaintiffs should have been

reimbursed. *See id.* at 402-03 (citing *Blue Cross of Cal. V. Anesthesia Care Assocs. Medical*

*Group, Inc*. 187 F. 3d 1045 (9th Cir. 1999). *See also Newark Beth Israel*, Civ. Nos. 03-2922, 05-

5309, 05-5737, 05-5742, 2006 U.S. Dist. LEXIS 70997 (D.N.J. Sept. 29, 2006). The Plaintiffs'

right to recovery, then, if it exists at all, depends entirely on the operation of third-party contracts

executed by the Plan that are independent of the Plan itself. This argument applies equally to the

Plaintiffs' quantum meruit claim.

Therefore, pursuant to Third Circuit Law, the Plaintiffs would not be permitted to bring a

suit under § 502(a) of ERISA, thereby, failing to meet the requirements of the second *Pascack* prong. Ultimately, this means that the matter before this Court is not removable as the underlying claims are not preempted by ERISA. Following the long line of Third Circuit precedence, precedence from this Court, and the lack of Horizon to prove the matter is properly before this Court, it is respectfully recommended that the Plaintiffs' Motion to Remand be granted.

**Counsel's Fees and Sanctions**

There exists a tremendous amount of litigation in this Court on this very issue. Moreover, there are legitimate issues raised in this case. There exists a legitimate, factual difference about the presence of an assignment and a differing opinion on how assignments are to be treated in ERISA matters. Critically, Third Circuit case law on this matter is minimal. Hence, Defendants' motion to remand was in no way frivolous and therefore, this Court recommends that there is no right to recovery of counsel fees.

<u>**CONCLUSION**</u>

For the foregoing reasons it is respectfully recommended that Plaintiffs' motion to remand this action to the Superior Court of New Jersey be granted.

**SO RECOMMENDED**

_____          **s/ Esther Salas**
                                         **HONORABLE ESTHER SALAS,**
                                         **United States Magistrate Judge**